IN THE UNITED STATES
DISTRICT COURT DISTRICT OF COLUMBIA
NO. 1:18-cv-87

| | |
|---|---|
| Z.B. a minor, by and through his mother | : |
| Sylvia Sanchez | : |
| 241 K Street, N.E. | : |
| Washington, DC 20002 | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : |
| | : |
| vs. | : |
| | : |
| | : |
| | : |
| District of Columbia Public Schools, | : |
| 1200 1st Street, NE | : |
| Washington, DC 20001 | : |
| Defendant | : |
| | : |
| -and- | : |
| | : |
| District of Columbia, | : |
| 441 4th Street, NW | : |
| Washington, DC 20001 | : |
| Defendant | : |
| | : |

**VERIFIED COMPLAINT**

I. Preliminary Statement

1. This action is brought by Z.B. by and through his legal guardian Sylvia Sanchez, and

Plaintiff seeks that this Court Place Z.B. at the Kingsbury Day School, an appropriate

educational

setting reasonably calculated to provide Z.B. educational benefit based on his unique needs, and reasonable attorneys' fees pursuant to the Individuals with Disabilities Education Act, (IDEA) 20 U.SC. §1401 et seq..

## II.    <u>Jurisdiction</u>

2.      This Court has jurisdiction pursuant to 20 U.S.C. §1415(e)(4).

## III.    <u>Parties</u>

3.      Plaintiff is a child with disabilities, who resides at 241 K Street, N.E. Washington, DC 20002 and has resided in the District of Columbia during the time of the action giving rise to this Complaint.

4.      Defendant, the District of Columbia Public Schools System (DCPS) is established by the laws of the District of Columbia with the responsibility of providing education, including special education, to disabled children residing in the District of Columbia. The DCPS receives federal funds from the United States Department of Education pursuant to the Individuals with Disabilities Education Act (IDEA).

## IV.    FACTUAL ALLEGATIONS

### *PROCEDURAL BACKGROUND*

5.      Z.B. is a 13-year 5-month Z.B. enrolled at Kingsbury Day School. Z.B. is enrolled in 8th grade Z.B. currently identified as a High Functioning Student on the Autism Spectrum (Autistic Child).

6.      Plaintiff filed a due process complaint with the District of Columbia – Office of the State Superintendent of Education against Defendant on 8/11/17.

7.      The case was assigned to Hearing Officer Natasia Blount.

8.      Defendant filed a timely response on 8/21/17, and did not challenge jurisdiction.

9.      The issues at the hearing were as follows:

**(a)**     Whether DCPS denied Z.B. a FAPE by failing to involve Plaintiff in the placement determination in summer 2017. DCPS circumvented Plaintiff's full involvement in the placement determination, though it was aware of Parents' court ordered custody agreement.

**(b)**     Whether DCPS denied Z.B. a FAPE by failing to convene an IEP meeting at a date and time convenient to Plaintiff in spring 2017.

**(c)**     Whether DCPS denied Z.B. a FAPE by failing to provide the Plaintiff with a copy of Plaintiff's procedural due process rights when it changed Z.B.'s placement in summer 2017.

**(d)**     Whether DCPS denied Z.B. a FAPE by failing to identify an appropriate location of services for Z.B. in summer 2017.

10.     The hearing was conducted on 9-21-2017 and 10-11-2017.

11.     A determination was issued on 10-25-2017.  Hearing Officer Blount determined that Plaintiff did not carry their burden at the hearing.


## *FACTS*

12.     Z.B.'s October 8, 2015 IEP classified Z.B. with Autism Spectrum Disorder, and provided Z.B. 26 hours per week of specialized instruction outside the general education setting, 8 hours per month of occupational therapy services outside the general education setting, 6 hours per month of physical therapy services outside the general education setting, 4 hours minutes per month of speech-language pathology services outside the general education setting and 6 hours per month of behavior support services outside the general education setting.[15]


13.     Z.B. is often internally distracted, which presents difficulties for Z.B.'s academic performance.  Z.B. also responds negatively to significant changes in routine

14.     In spring 2016 without the knowledge of Mark Branham, Plaintiff entered Z.B. into the DCPS school lottery, and Z.B. got into a public, general education school with some smaller classrooms ("Lottery School") that Plaintiff desired Z.B. to attend, as a less restrictive environment ("LRE"), in part to mainstream Z.B. in preparation for adult life, and to help Z.B.'s social skills to improve.  With a short window of time available to claim the lottery school slot for Z.B., Plaintiff wrote an email to Mark Branham laying out the reasons Plaintiff thought the two of them should consider claiming the lottery slot and moving Z.B. to the general education school.

---

[1] Approximately 5 hours per week of specialized related services or one hour per day

15.     Mark Branham forwarded Plaintiff's email to Defendant A and Z.B.'s IEP team members at Kingsbury Day School.  The Lottery School contacted Defendant to express that it did not believe it could meet Z.B.'s needs.

16.     Z.B.'s team agreed that Z.B. required more support than the Lottery School could provide. Defendant informed Parents of several recommended placements for Z.B. and referred Z.B. to DCPS' centralized location of services team ("LOS").

17.     On June 6, 2016 and July 11, 2016, Defendant sent referral packets to two different nonpublic schools Plaintiff researched these schools in the summer 2016 and agreed that, depending on the input from others knowledgeable of Z.B.'s needs, that these schools were potentially appropriate settings. However, Z.B. was not accepted into either of these schools.

18.     In approximately June 2016, Z.B.'s IEP team agreed that Z.B. would receive an independent comprehensive psychological evaluation ("IEE") at DCPS' expense.  Plaintiff desired an IEE to confirm that Autism remained the correct disability classification for Z.B.  Plaintiff believed the Autism classification limited Z.B.'s school location options.  The IEE was also to assess Z.B.'s readiness to move to an LRE as Plaintiff desired.

19.     Z.B.'s IEE comprehensive psychological evaluation report was completed on August 3, 2016 and established that Z.B. had shown significant growth since his evaluation conducted by the Defendant in 2015 including an increase in his math calculation skills from the 2nd percentile to the 7th percentile, an increase in his applied math problems skills from

the 4th percentile to the 9th percentile, and an increase in his reading comprehension skills from the 6th percentile to the 32nd percentile.

20.     Additionally, according to his present levels of performance, Z.B. exhibited a growth from the 4th grade level to the 6th grade level in math between 2015 and 2016.

21.     The August 2016 IEE demonstrated that Z.B.'s cognitive abilities are a relative strength, with domains testing from the low average to the high average range.  Z.B.'s full scale IQ falls in the average range, at the 34th percentile.  Academically, Z.B.'s testing scores reflect a great deal of variability with some areas of significant disparities as compared to the cognitive scores.

22.     Because Z.B.'s disability classification is Autism, not all special education nonpublic schools will consider Z.B. for admission.  Z.B. requires a school that can challenge Z.B. academically and support Z.B.'s behavioral and emotional needs.  As of the start of the 2016-2017 school year, Z.B. needed all of the services on the IEP.

23.     On September 20, 2016, Z.B.'s IEP team met to review the IEE.  It determined the Z.B.'s disability classification continued to be Autism, and that Z.B.'s LRE continued to be a separate, outside the general education setting.

24.     Plaintiff believed that Kingsbury Day School could continue to meet Z.B.'s needs and expressed that Z.B. should remain there.  Mark Branham deferred to Plaintiff's decision for the time.  The team agreed to reconvene in October to consider an additional teacher rating scale.

25.    Both parents agreed to meet with Defendant regarding "next steps" following the September 20, 2016 meeting.  Referrals were sent to nonpublic schools following the September 2016 meeting and prior to April 2017; however, Plaintiff declined to allow Z.B. to visit the referred nonpublic schools. As she was already aware of the programs and disagreed with the placements because, *inter alia*, they could not implement Z.B.'s IEP as currently agreed to and because of the significant difference in distance from her home to these schools given Z.B.'s unique disability and difficulties with change in routine.

26.    The IEP team indicated on Z.B.'s October 2016 IEP that Z.B. does not require ESY, because it indicated that Z.B. was able to recover from the summer regression within a few weeks. The team indicated that it would monitor what regression Z.B. experienced over the winter break.[2]

27.    Z.B.'s October 12, 2016 IEP classified Z.B. with Autism Spectrum Disorder.  It indicated that Z.B.'s behavior impedes Z.B.'s learning or that of other students.  It indicates that Z.B. experiences behavior regression at the start of the school year.  It indicates that Z.B. is provided behavior support through the school-wide incentive program, and is also provided a behavior checklist to keep Z.B. on task and provide Z.B. an overview of the school day.

28.    Z.B.'s October 12, 2016 IEP includes goals in math, reading, written expression; communication/speech and language; emotional, social and behavioral development; and motor skills/physical development.  It provides 26 hours per week of specialized instruction outside the

---

[2] P-5-2.

general education setting, 480 minutes per month of occupational therapy services outside the general education setting, 360 minutes per month of physical therapy services outside the general education setting, 240 minutes per month of speech-language pathology services outside the general education setting, and 360 minutes per month of behavioral support services outside the general education setting. Defendant attended this meeting and agreed with the level of services provided in the IEP at that time

29.     Z.B.'s October 12, 2016 IEP describes Z.B.'s LRE as follows:  ***Instruction*** – "[Z.B.] requires a small class size with low Z.B. to teacher ratio, instruction and integration of services in an out of general education, nonpublic setting to [Z.B.'s] deficits;" ***Occupational Therapy*** – "Due to deficits in sensory processing, control, developmental hand, bilateral coordination, and visual motor skills, [Z.B.] individualized instruction and support of related services to effectively access the school/class environment;" ***Physical Therapy*** – "Due to deficits in postural strength, balance, motor planning, and endurance, [Z.B.] requires support and related services in a small structured setting to safely negotiate and access [Z.B.'s] school environment;" ***Speech-Language Pathology*** – "Due to deficits in expressive and receptive language as well as articulation impact [Z.B.'s] access to the curriculum.

Pragmatic language deficits impede social communication in the classroom;" and ***Behavioral Support Services*** – "Z.B. needs counseling due to problems with:  behavioral control, frustration tolerance, cognitive rigidity, coping skills & social skills."[3]

---

[3] P-4-18.

30.     Defendant B conducted formal classroom observations of Z.B. at Nonpublic School 1 on

April 7, 2017, April 13, 2017 and May 23, 2017.  During these observations, Z.B. exhibited a great

deal of off-task behavior and low engagement, except when the teacher was working with Z.B.

one-on-one.  Z.B.'s adverse behaviors were addressed through verbal prompting and intermittent

sensory breaks when Z.B. became overwhelmed.


31.     On April 14, 2017, Defendant issued to Plaintiff a letter titled "Prior Written Notice – Intent

to Discuss Change in Placement," which provided the following description of the proposed or

refused action(s): "DCPS is proposing to meet to discuss a change in location of SY 2017-2018 to

a school that can meet [Z.B.'s] needs and service [Z.B.'s] IEP.

32.     Beginning April 14, 2017, Defendant attempted to discuss Z.B.'s current location of

services and other potential location of services options with both parents.  Defendant preferred to

meet with only with the Parents initially but Plaintiff was only comfortable having the meeting if

it included Z.B.'s MDT members as they were most knowledgeable of Z.B.'s needs in the

educational environment


33.     In May 2017, Defendant attempted to schedule a meeting prior to the end of the 2017-2018

school year with both parents and the the MDT team.  Due to work and family obligations, Plaintiff

was only available during the afternoons beginning at 1:30. Kingsbury Day School offered

availability for May 25, 2017 at 1:30 p.m.  but Defendant was not available at that time. No meeting

was ever held with the Plaintiff after this point.

34.     Between approximately April 2017 and June 2017, Defendant attempted to persuade Plaintiff to allow Z.B. to visit other nonpublic schools despite Plaintiff's expressed opinion that she was not in agreement with their programs or Z.B. attending there based on their inability to implement his IEP as written and the distance of those programs from her home.

35.     Kingsbury Day School's bell schedule is 32 hours per week of specialized instruction, minus related services.[4]

36.     On or around July 11, 2017, DCPS submitted a referral for Z.B. to Kennedy Kreiger.  On this referral, Defendant intentionally excluded the parent from this process because she invoked her right as a parent to disagree with their proposed placements of Z.B. in spite of their knowledge that on December 4, 2015, a judge of the District of Columbia Superior Court issued a "Final Divorce and Custody Order" finding that "[a]though [Parents] seem to mostly be able to agree . . . in limited circumstances, [the court] must award tie-breaking authority to one party in order to enable [Parents] to share joint legal custody without Court intervention."  The court ordered that "[i]n the event that the parties cannot reach a shared decision regarding their children after a good-faith effort to do so, [Plaintiff] shall have tie-breaking authority."  In awarding tie-breaking authority to Plaintiff, the court noted that its anticipation that Plaintiff would "need to exercise . . . tie-breaking authority rarely, and stresses that the parties must negotiate in good faith before [Plaintiff] exercises . . . tie-breaking authority in any situation.

_____

[4] Testimony of Defendant B.

37.     On August 7, 2017, Z.B. was accepted into Kennedy Kreiger with an 11-month program, 30 hours per week classroom instruction during the school year (a 2 hour reduction from his current placement),  22 hours per week classroom instruction during the summer (a 4 hour reduction from his current placement), 240 minutes per month direct speech and language therapy, 480 minutes per month direct occupational therapy, 360 minutes per month direct behavioral support services, 360 minutes per month direct physical therapy services, and daily transportation.

38.     Additionally, Kennedy Kreiger is over 2.5 times the distance from plaintiff's home as Kingsbury Day School and does not have a high school in its Silver Spring campus. Accordingly, after transitioning to a program significantly further away than his current program, Z.B. would have to transition to another program in the fall of 2018 that is 7 times the distance from Plaintiff's home as his current program.

39.     Kingsbury Day School has a high school on campus and Z.B. would not have to transition in the Fall of 2018 if he remained.

40.     This would also result in a 7.7. % reduction in specialized instruction during the school year, or the equivalent of 3/8 of one school day every week. Additionally, besides effectively taking away a half days work of instruction every week, this placement would require Z.B. to attend school during the summer where his current IEP does not require extended school year services.

41.     There was never any evidence presented that the October 12, 2016 IEP was inappropriate nor was there any evidence presented that Kingsbury Day School could not implement this IEP.

42.     Additionally, Kingsbury Day School is the closest program to the plaintiff's home that can implement his IEP.

43.     It is important that Z.B. not participate in ESY because doing so would result in Z.B. missing out on family time that would reduce his normal socialization during the summer, significantly change his normal routine, and thus have a significant emotional impact on Z.B. that would significantly impact his ability to access public education.

44.     This would be an appropriate conversation for an IEP team, however, Defendant has failed to schedule or hold an IEP meeting for the current school year in spite of the fact that Z.B.'s IEP expired on October 11, 2017.

**CLAIM # 1:**

**DENIAL OF FAPE**

45.     Plaintiffs incorporate by reference herein the allegations in Paragraphs 1-44 above, inclusive.

46.     Defendants receive federal financial assistance and as such are subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Section 504"), and the federal regulations promulgated thereunder.

47.     20 U.S.C. § 1415(f)(3)(E)(ii) states that a procedural violation results in a denial of

FAPE where the violation (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits. See Turner v. DC 952 F.Supp.2d 31, 36(D.D.C. 2013)

48.     As the Defendant intentionally and admittedly prevented the Plaintiff in discussing its placement decision, Defendant significantly impeded the parent's opportunity to participate in its placement decision and thus denied

## CLAIM # 2

## ILLEGAL CHANGE IN PLACEMENT

49.     Plaintiffs incorporate by reference herein the allegations in Paragraphs 1-44 above, inclusive.

50.     In accordance with 20 USC § 1412(a)(5) , as implemented by 34 CFR § 300.116(a), in determining the educational placement of a child with a disability, including a preschool child with a disability, each public agency must ensure that the placement decision is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; and is made in conformity with the LRE provisions of this subpart, including §§ 300.114 through 300.118;

51.     In accordance with 20 USC § 1412(a)(5), as implemented by 34 CFR § 300.116(a), in determining the educational placement of a child with a disability, including a preschool child with a disability, the child's placement is determined at least annually; is based on the child's IEP; and is as close as possible to the child's home.

52.     Defendant illegally placed Z.B. in another setting without the input of those persons knowledgeable of his needs, mainly his special education teacher, current educators and evaluators, and his mother.

53.     Additionally, without establishing in any manner that Kingsbury Day School could not implement his IEP, changed Z.B.'s placement to a setting more than twice the distance away from his home than his current IEP rather than allow Z.B. to remain in the setting closest to his home that could implement his then current IEP.

20 U.S.C. § 1415(f)(3)(E)(ii) states that a procedural violation results in a denial of FAPE where the violation (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits. See Turner v. DC 952 F.Supp.2d 31, 36(D.D.C. 2013)

20 U.S.C. § 1415(f)(3)(E)(ii) states that a procedural violation results in a denial of FAPE where the violation (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits. See Turner v. DC 952 F.Supp.2d 31, 36(D.D.C. 2013)


**CLAIM #3:**

**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**

54.     Plaintiffs incorporate by reference herein the allegations in Paragraphs 1-44 above, inclusive.

55.     Defendants receive federal financial assistance and as such are subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Section 504"), and the federal regulations promulgated thereunder.

56.     The conduct previously alleged violates Section 504, and the federal regulations promulgated thereunder. 24. Section 504 prohibits, inter alia, recipients of federal financial assistance from discriminating against individuals with disabilities on the basis of disability by subjecting them to discrimination, excluding them from participation in, or denying or otherwise limiting them in any benefits, services, programs or activities offered by the recipient.

57.     Defendant has violated Section 504, inter alia, by illegally retaliating against Plaintiff by intentionally excluding her from participating in the placement decision of her child simply because she invoked her right to disagree with the placement they were proposing. Additionally, Defendant is currently discriminating against Z.B. by failing to provide him with a current IEP simply because the Plaintiff disagrees with his change in placement.


**CLAIM # 4**

**VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT OF 1977**

58.     Plaintiffs incorporate by reference herein the allegations in Paragraphs 1-44 above, inclusive.

59.     Defendant, DCPS, is subject to the Human Rights Act of 1977 ("DCHRA"), DC CODE §§ 1400 -1404 et seq.,

60.     DCHRA prohibits, inter alia, the denial, restriction, abridgement, or condition the use of, or access to, any of its facilities, services, programs, or benefits of any program or activity to any person otherwise qualified, wholly or partially, for a discriminatory reason, based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, political affiliation, source of income, or disability of any individual

61.     Defendant, DCPS, has violated the DCHRA by, by illegally retaliating against Plaintiff by intentionally excluding her from participating in the placement decision of her child simply because she invoked her right to disagree with the placement they were proposing. Additionally, Defendant is currently discriminating against Z.B. by failing to provide him with a current IEP simply because the Plaintiff disagrees with his change in placement.


**WHEREFORE**, plaintiff prays for the following relief:

1.     That this Court take jurisdiction of this matter.

2.     That, pursuant to the Individuals with Disabilities Education Act, this Court Overturn the determination of Natasia Blount on October 25, 2017 and rule in favor of the Plaintiff's in this matter,

3.     That, pursuant to the Individuals with Disabilities Education Act, this Court Order Defendant to immediately Place Z.B. in the Kingsbury Day School at public expense,

4.     That, pursuant to the Individuals with Disabilities Education Act, this Court award plaintiff reasonable attorneys' fees and costs of $35,000.00, in addition to attorney's fees and costs for the representation provided in this action.

5. Any additional relief this Court deems appropriate.

Respectfully submitted,

_____/CR/_____

Chesseley A. Robinson, III
DC Bar # 485505
2516 Australia Drive
Raleigh, NC 27610

**VERIFICATION**

I, Sylvia Sanchez, declare under penalty of perjury that the foregoing is true and correct. Executed on
January 10, 2018.

Sylvia Sanchez

As witnessed by :

_____/CR/_____

Chesseley A. Robinson, III
DC Bar # 485505
2516 Australia Drive
Raleigh, NC 27610