## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

Z.B., a minor, by and through his mother,
Sylvia Sanchez,

      Plaintiff

      v.

THE DISTRICT OF COLUMBIA, *et al.*,

      Defendants

Civil Action No. 18-87 (CKK)

---

## MEMORANDUM OPINION
(April 25, 2019)

This case is about a disagreement concerning the change in school for a child, Z.B., with autism. Z.B. was attending the nonpublic Kingsbury Day School, but the District of Columbia Public Schools ("DCPS") determined that the proper location of services to implement Z.B.'s Individualized Education Program ("IEP") was another nonpublic school, Kennedy Krieger. Plaintiff has filed this lawsuit claiming that DCPS's decision to change Z.B.'s school was an illegal change in placement and denied him a free and appropriate public education ("FAPE").

Presently before the Court are Plaintiff's [29] Motion for Summary Judgment and Default Judgment[1] and Defendant DCPS's [30] Cross-Motion for Summary Judgment. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the

---

[1] Plaintiff titles her Motion a "Motion for Summary Judgment and Default Judgment." However, Plaintiff's Motion contains no arguments in support of granting a default judgment. Additionally, Defendant filed a timely Answer to Plaintiff's Second Amended Complaint. *See* ECF No. 28. Accordingly, the Court will treat Plaintiff's Motion as one for summary judgment only.

[2] The Court's consideration has focused on the following documents:

- Pl.'s Mot. for Summary Judgment and Default Judgment ("Pl.'s Mot."), ECF No. 29;

- Mem. of Points and Authorities in Support of Def.'s Opp'n to Pl.'s Mot. for Summary Judgment, and Cross-Mot. for Summary Judgment ("Def.'s Mot."), ECF No. 30;

- Pl.'s Response to Def.'s Mot. for Summary Judgment and Reply to Def.'s Opp'n ("Pl.'s Reply"), ECF No. 32; and

Court DENIES Plaintiff's Motion and GRANTS Defendant's Motion. The Court concludes that Z.B.'s change in schools to Kennedy Krieger was a change in location of services rather than an illegal change in educational placement. The Court further concludes that Plaintiff's inability to fully participate in Z.B's change in location of services to Kennedy Krieger did not deny Z.B. a FAPE.

## I. BACKGROUND

Plaintiff is the mother of Z.B., a minor child found eligible to receive special education and related services under the IDEA as a student with a disability. *See* 20 U.S.C. § 1400 *et. seq.* Defendant is a municipal corporation that receives federal funds pursuant to the IDEA in exchange for providing a free and appropriate public education ("FAPE") and is obligated to comply with the IDEA. *See* 20 U.S.C. § 1411, 1412(a)(1)(A).

### A. Statutory Background

The IDEA mandates that local school districts ensure that "[a]ll children with disabilities residing in the State … regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A). Once such children have been identified, located, and evaluated the school district must provide them with a FAPE. A FAPE is defined as "special education and related services that-- (a) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool,

---

• Def.'s Reply to Pl.'s Opp'n to Def.'s Cross-Mot. for Summary Judgment ("Def.'s Reply"), ECF No. 34.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. See LCvR 7(f).

elementary school, or secondary school education in the State involved; and (D) are provided in conformity with [a child's] individualized education program." *Id.* § 1401(9).

To ensure children with disabilities receive a FAPE, IDEA requires that the school district create and implement an Individualized Education Plan ("IEP"). *Lesesne ex rel. B.F. v. D.C.*, 447 F.3d 828, 830 (D.C. Cir. 2006). The IEP is created at multi-disciplinary meetings with a representative of the school district, teachers, parents or guardians, and the child if appropriate. *Honig v. Doe*, 484 U.S. 305, 311 (1988). The IEP sets out the child's baseline educational performance, establishes long-term and short-term goals for improvement, and lays out the specialized educational services the child will require to meet those goals. *Id.* At a minimum, the IEP must be reasonably calculated to provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley,* 458 U.S. 176, 203-04 (1982).

After the IEP is created, the school district must provide the child with an appropriate educational placement that is in line with the IEP. *See Alston v. D.C.*, 439 F. Supp. 2d 86, 90 (D.D.C. 2006). A child's appropriate educational placement should be in the least restrictive environment possible. *See Brown v. D.C.*, 179 F. Supp. 3d 15, 26-27 (D.D.C. 2016). If the child's appropriate educational placement is in the regular classroom of a public education system, the IEP "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 204. But, if there is no public school which is suitable, the school district "must pay the cost of sending the child to an appropriate private school." *Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 519 (D.C. Cir. 2005) (internal quotations omitted).

## B. Factual Background

In her Motion, Plaintiff filed a separate "Statement of Material Facts Not In Dispute." However, as judicial review in this case is based on the administrative record, Plaintiff should instead have included "a statement of facts with references to the administrative record." LCvR 7(h)(2). Nevertheless, the Court will consider Plaintiff's "Statement of Material Facts Not In Dispute" in conjunction with Defendant's Statement of Facts in explaining the case's factual background.

Z.B. has been identified as eligible for special education and related services based on his disability classification of Autism Spectrum Disorder. AR 6. Z.B. was enrolled at and attended Kingsbury, a nonpublic school in Washington D.C., through the end of the 8th grade.

Beginning in 2016, Plaintiff and Mark Branham, with whom Plaintiff shares custody of Z.B., became concerned that Kingsbury was not an appropriate school for Z.B. AR 10004-09 (Mr. Branham's testimony that "I didn't think Kingsbury was serving his needs and in fact neither did [Plaintiff]"). These concerns were based on fears that Kingsbury was not meeting Z.B.'s needs and issues with other students. AR 1007-08. Plaintiff attempted, through the school lottery, to place Z.B. at Capitol Hill Montessori, a public, general education school for the 2016-2017 school year. AR 491-92. But, Capitol Hill Montessori indicated that it could not meet Z.B.'s needs. AR 948-49. Following Z.B.'s rejection from Capitol Hill Montessori, Defendant agreed that, rather than an inclusion setting, "other nonpublic placement that offered different supports than what Kingsbury had" should be considered. AR 945-46. Because Defendant

concluded that Kingsbury was not providing Z.B. with adequate support, Defendant began considering other nonpublic locations for Z.B. AR 946, 949-50, 955-57, 968-69.

In approximately June 2016, at Plaintiff's suggestion, Z.B. underwent an independent comprehensive psychological evaluation ("IEE") paid for by Defendant. AR 315-26. Plaintiff hoped that the IEE would show that Z.B. had a disability categorization other than autism and was prepared to move into a less restrictive setting. However, in September 2016 during a meeting to review the IEE, Plaintiff, Defendant, and other members of Z.B.'s Kingsbury education team determined that autism was Z.B.'s correct diagnosis. AR 541-42 (indicating that "everyone agreed with the autism disability category"). Plaintiff agreed that Z.B. would not be successful in a general education setting. AR 546 (indicating that Plaintiff "accepted the decision of the team"). Additionally, the parties decided to allow Z.B. to remain at Kingsbury until Z.B's location of services could be further discussed at his October 2016 IEP meeting.

Following the September 2016 meeting, Defendant sent referrals for Z.B. to attend other non-public schools which could implement his IEP. AR 956-59 (stating that "the referrals were still rolling in"). However, Plaintiff refused to allow Z.B. to visit those schools as she did not think that they would meet Z.B.'s needs. *See* AR 958-59 (stating that Plaintiff "did not" cooperate with the referral process), 961-62 (indicating that Plaintiff refused to go on a tour of a potential school), 988 (stating that Plaintiff declined to meet with Defendant).

In October 2016, Z.B.'s IEP team met. Z.B. was classified with Autism Spectrum Disorder. AR 270. The IEP stated that Z.B.'s education program would include: 26 hours per week of specialized instruction, 480 minutes per month of occupational therapy, 360 minutes per month of physical therapy, 240 minutes per month of speech-language pathology, and 360 minutes per month of behavioral support services. AR 287. Plaintiff agreed with the substance of

Z.B.'s IEP. AR 502 (indicating that Plaintiff was present at the IEP meeting and agreed with its content).

In January 2017, Selena Barlow of DCPS became the nonpublic monitor specialist in charge of Z.B.'s case. AR 1023. Mr. Branham discussed with Ms. Barlow his concerns about Z.B.'s placement at Kingsbury. AR 1027-28. Ms. Barlow conducted a review of Z.B.'s documents and performed three observations of Z.B. at Kingsbury. AR 1049-52 (discussing an observation of Z.B.), 1070-72 (discussing another observation of Z.B.). Based on her observations, Ms. Barlow became concerned about Z.B.'s location of services. Ms. Barlow noted that Z.B. was not engaged during class and that he had problems contributing to the class, following instructions, organizing his work, completing tasks, and behaving appropriately. AR 1048, 1051-53, 1056. Ms. Barlow noted that, despite his behavioral difficulties, Z.B. did not have a formal Behavioral Implementation Plan ("BIP") at Kingsbury. AR 1062 (discussing the need for a BIP based on the lack of "engagement" and "disruptive behaviors"). Based on these observations, Ms. Barlow determined that the individualized behavior programming for Z.B. was not adequate and that Kingsbury was not meeting Z.B.'s behavioral needs. AR 1066-70. Additionally, after reviewing Z.B.'s IEE, Ms. Barlow found Z.B.'s scores to be "very concerning" and indicative of a lack of progress. AR 1109-10, 1115-17 (explaining that Z.B. "is in school but he is not engaged in instruction and this has clearly been reflected in his scores with the educational testing that he is not learning a whole lot"). Ms. Barlow's concerns about Z.B.'s academic and behavior progress at Kingsbury were informed by other experiences in which Kingsbury had not met the academic and behavioral needs of various students. AR 1182, 1186.

Plaintiff contests Ms. Barlow's observations and determinations, arguing that other record evidence shows that Z.B. regularly met his behavioral goals and was progressing

academically. AR 319-23 (showing academic achievement), 414-422 (behavioral trackers). However, Ms. Barlow's observations and findings were consistent with those of others on the Kingsbury staff. For example, Kingsbury's clinical psychologist noted that during the 2015-16 school year, Z.B. sought behavioral and emotional support more often than was scheduled. He was also aware of concerns about Z.B.'s lack of a formal BIP. AR 678-79, 687. Additionally, a Kingsbury teacher indicated that Z.B. had difficulty maintaining proper behavior and remaining focused during classes. AR 747-53.

Following Ms. Barlow's observations, Defendant continued to attempt to find a new location of services that would meet Z.B.'s educational and behavioral needs. AR 1083 (Ms. Barlow's testimony that "I was highly concerned and I didn't want that to continue so I was quickly developing the opinion that a new location service was needed"). Defendant sent Plaintiff and Mr. Branham several letters attempting to set up a meeting to discuss a change in location of services as well as suggesting potential locations. AR 264 (suggesting three schools on April 14, 2017), AR 234 (suggesting two schools on June 6, 2017), *see also* AR 1084-85 (requesting meeting to discuss change in location), 1092 (same), 1094-95 (same). Based on these letters, Plaintiff understood that Defendant was concerned about Z.B.'s location of services at Kingsbury. AR 556-57. Plaintiff further understood that, because they were unable to move forward with the referral process, Defendant was "forced to keep [Z.B.] in a location that [they did] not see is appropriate." AR 557. However, Plaintiff did not permit Z.B. to attend visits at the suggested alternative locations. AR 234 (letter noting Plaintiff's refusal to allow Z.B. to visit

other schools), 1097 (noting that referrals to other schools were cancelled because Plaintiff would not participate).

In May 2017, Defendant attempted to schedule a meeting prior to the end of the school year with both parents and Z.B.'s education team at Kingsbury. However, the only date on which Plaintiff and the Kingsbury team were both available to meet was May 25, 2017 at 1:30 p.m. Defendant could not attend at that time because Defendant had a meeting concerning another student at Kingsbury at 2:00 p.m. that day. AR 390-402. Defendant, Plaintiff, and Z.B.'s Kingsbury team were not able to conduct a meeting prior to the end of the school year; however, Defendant continued working to persuade Plaintiff to engage in the referral process. Due to Plaintiff's refusal to engage in the referral process, Z.B. was not accepted at other potential service locations. *See, e.g.,* AR 1097 (indicating that Z.B.'s referrals to two schools were cancelled because Plaintiff would not cooperate).

In approximately July 2017, Defendant began working with Mr. Branham in pursuing a referral to Kennedy Krieger school for Z.B. Defendant did not include Plaintiff in this referral process. AR 1099 (noting that Ms. Barlow did not include Plaintiff in the referral). In determining if Kennedy Krieger would be an appropriate location for Z.B., Ms. Barlow visited the classes that Z.B. would attend, spoke with the teacher, and observed the services and supports. AR 1103-04. In addition, Mr. Branham visited the school with Z.B. and was "really impressed" with the learning environment. AR 1010-11. Plaintiff argues that Defendant's decision to work with Mr. Branham instead of with Plaintiff on the referral to Kennedy Krieger violated a 2015 "Divorce and Custody Order" giving Plaintiff "tie-breaking authority" in the case

that good-faith efforts did not result in a shared decision between Plaintiff and Mr. Branham. AR 405, 408.

On August 7, 2017, Z.B. was accepted to Kennedy Krieger, and two days later Defendant informed Plaintiff and Mr. Branham that "Kennedy Krieger Montgomery County Campus has been identified as [Z.B.'s] location of services." AR 306-07. Z.B. could have begun classes on August 28, 2017. AR 304. Consistent with Z.B.'s IEP, Kennedy Krieger offered the following services: 30 hours per week of classroom instruction, 22 hours per week of classroom instruction in July, 480 minutes of occupational therapy per month, 360 minutes of physical therapy per month, 240 minutes of direct speech and language therapy per month, and 360 minutes of behavioral support services per month. AR 304. Kennedy Krieger indicated that it would be able to implement Z.B.'s IEP and develop a formal BIP. AR 901.

On August 11, 2017, Plaintiff filed a due process complaint. AR 21-28. The hearing officer identified the following issues for adjudication:

- "Whether DCPS denied [Z.B] a FAPE by failing to involve [Plaintiff] in the placement determination in summer 2017. DCPC [sic] circumvented [Plaintiff's] full involvement in the placement determination, though it was aware of Parents' court ordered custody agreement.
- Whether DCPS denied [Z.B.] a FAPE by failing to convene an IEP meeting at a date and time convenient to [Plaintiff] in spring 2017.
- Whether DCPS denied [Z.B.] a FAPE by failing to provide [Plaintiff] with a copy of [her] procedural due process rights when it changed [Z.B.'s] placement in summer 2017.
- Whether DCPS denied [Z.B.] a FAPE by failing to identify an appropriate location of services for [Z.B.] in summer 2017."

AR 5. The administrative due process hearing was held on September 21, 2017 and October 11, 2017. *Id.* The hearing officer denied all of Plaintiff's claims, concluding, in relevant part, that

"the change from [Kingsbury] to [Krieger Kennedy] was a change in service locations rather than a change in placement." AR 15.

On January 15, 2018, Plaintiff filed this lawsuit challenging the conclusions of the hearing officer. On February 1, 2018, Plaintiff filed a Motion for Preliminary Injunction to Compel Stay-Put Under the Individuals With Disabilities Act. *See* ECF No. 9. Plaintiff requested that the Court order Defendant to allow Z.B. to remain at Kingsbury at public expense while the lawsuit was pending. On February 16, 2018, the Court denied Plaintiff's motion, explaining that Plaintiff was not entitled to a stay-put injunction because Plaintiff was not challenging a fundamental change to Z.B.'s current educational placement. Feb. 16, 2018 Memorandum Opinion, ECF No. 17, 1-2.

On August 22, 2018, the parties filed a Joint Motion indicating that Plaintiff and Defendant had engaged in an IEP meeting at which an updated IEP was developed and that the location of services for Z.B. for the 2018-2019 school year was agreed to be Katherine Thomas School. Based on these developments, the parties agreed that several issues in Plaintiff's Amended Complaint were moot. Joint Motion, ECF No. 26. In order to narrow the issues, the Court ordered that Plaintiff file a Second Amended Complaint, Defendant file an Answer, and then the parties file cross-motions for summary judgment.

Based on Plaintiff's Second Amended Complaint and the parties' summary judgment briefing, there are only two claims still pending before the Court. First, Plaintiff contends that Defendant committed an illegal change in placement by referring Z.B. to Krieger Kennedy. Second, Plaintiff claims that Z.B. was denied a FAPE when Defendant committed a procedural

violation by preventing Plaintiff from participating in the referral to Krieger Kennedy. *See* Sec. Am. Compl., ECF No. 27, ¶¶ 45-53. The Court will address both claims in turn.

## II. LEGAL STANDARD

Under the IDEA, a "party aggrieved by the findings and decision" of the hearing officer may bring a civil action in federal court. 20 U.S.C. § 1415(i)(2)(A). The court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* at § 1415(i)(2)(C). In a civil action reviewing an IDEA administrative determination, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *D.R. ex rel. Robinson v. D.C.,* 637 F. Supp. 2d 11, 16 (D.D.C. 2009). Where, as here, neither party asks the Court to consider additional evidence, "the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin,* 125 F.3d 1045, 1052 (7th Cir. 1997) (internal quotations omitted).

The party challenging the hearing officer's determination bears the burden of proof and must "'at least take on the burden of persuading the court that the hearing officer was wrong.'" *Reid,* 401 F.3d at 521 (quoting *Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C. Cir. 1989)). The preponderance-of-the-evidence standard in this context does not grant the reviewing court unfettered *de novo* review. *See Rowley,* 458 U.S. at 206 ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Rather, courts must give "due weight" to the

administrative proceedings. *Id.* "'[F]actual findings from the administrative proceeding are to be considered prima facie correct.'" *Roark ex rel. Roark v. D.C.,* 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting *S.H. v. State–Operated Sch. Dist. of Newark,* 336 F.3d 260, 270 (3d Cir. 2003)). Because the IDEA permits a reviewing court to entertain additional evidence at the request of a party, courts employ "'less deference than is conventional' in administrative proceedings." *Reid,* 401 F.3d at 521 (quoting *Kerkam,* 862 F.2d at 887). Nevertheless, the Court should "defer to the [hearing officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." *S.H.,* 336 F.3d at 270; *accord Alfono v. D.C.,* 422 F. Supp. 2d 1, 8 (D.D.C. 2006); *Armstrong v. D.C.,* No. 03-2598, 2005 WL 433448, at *2 (D.D.C. Feb. 24, 2005

### III. DISCUSSION

Plaintiff brings two claims against Defendant. First, Plaintiff contends that Defendant illegally changed Z.B.'s educational placement by referring him to Krieger Kennedy. Second, Plaintiff argues that Z.B. was denied a FAPE when Defendant committed a procedural violation by preventing Plaintiff from participating in Z.B.'s placement at Krieger Kennedy. The hearing officer concluded that Defendant did not illegally change Z.B.'s educational placement because the change to Krieger Kennedy was a change in service locations, not a change in educational placement. Additionally, the hearing officer concluded that Plaintiff's exclusion from the referral to Krieger Kennedy did not deny Z.B. a FAPE because Krieger Kennedy was capable of implementing Z.B.'s IEP and Defendant had made a good-faith attempt to engage with Plaintiff. The Court agrees.

**A. Illegal Change in Educational Placement**

Plaintiff contends that the hearing officer erred in concluding that transferring Z.B. from Kingsbury to Kennedy Krieger was a change of location of services, not a change in educational placement. Instead, Plaintiff argues that Z.B.'s referral to Kennedy Krieger was an illegal change in placement. The Court disagrees.

The IDEA does not define "educational placement." But, courts have interpreted educational placement to go beyond the specific location of the school at which the student is enrolled. *D.K. ex rel. Klein v. D.C.*, 962 F. Supp. 2d 227, 233 (D.D.C. 2013) ("The physical school location alone does not constitute an 'educational placement.'"); *Johnson v. D.C.*, 839 F. Supp. 2d 173, 177 (D.D.C. 2012) ("The fundamental flaw in Plaintiffs' argument is the underlying assumption that M.J.'s 'educational placement' is the physical school he attends."); *James v. D.C.*, 949 F. Supp. 2d 134, 139 (D.D.C. 2013) (noting that "an appropriate location of services is one which can implement the student's IEP and meet his specialized educational and behavioral needs"). Instead, in order to constitute a change in educational placement, the change must "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program." *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984). Accordingly, a change in the location of the student's school will not constitute a change in educational placement unless it is accompanied by a fundamental change in or elimination from the student's education program.

Here, Plaintiff has three arguments as to why the hearing officer erred and the referral to Kennedy Krieger actually resulted in a fundamental change to Z.B.'s education program. First, Plaintiff argues that the change to Kennedy Krieger resulted in a 7.7% reduction in specialized instruction during the school year. Second, Plaintiff contends that the change would require Z.B.

to attend school during the summer as Kennedy Krieger has an 11-month, rather than a 10-month, calendar. Third, Plaintiff claims that the distance between Z.B.'s residence and Kennedy Krieger is more than double the distance between his residence and Kingsbury. The Court will address each argument in turn.

First, Plaintiff contends that the referral to Kennedy Krieger resulted in a fundamental change in Z.B.'s education program because Kennedy Krieger offered 7.7% less specialized instruction during the school year than did Kingsbury. Even though both schools offered the same hours of related services required under Z.B.'s IEP, Plaintiff argues that the reduction in specialized instruction is a fundamental change. *Compare* AR 304 (Kennedy Krieger's services) *with* AR 287 (Kingsbury's services). The Court finds that Plaintiff's argument fails to account for the full measure of instruction offered by Kennedy Krieger.

The difference in hours of specialized instruction offered at Kingsbury and Kennedy Krieger is based on the difference between the "bell schedules" of the two schools. The term "bell schedule" refers to when the instructional day starts and ends at a school. Kingsbury has 32 hours of instruction per week. Once Z.B.'s related services are accounted for, Kingsbury provided Z.B. with 26 hours of specialized instruction per week. AR 287. Kennedy Krieger offers 30 hours of instruction per week, or two hours less than Kingsbury, due to its shorter bell schedule. Accordingly, once Z.B.'s related services are accounted for, Z.B. would receive slightly less than 26 hours of specialized instruction per week.

But, there is no evidence that Z.B.'s IEP required him to have 26 hours of specialized education per week. AR 1102 ("Like nobody said at any IEP meeting that [Z.B.] has to have this level of specialized instruction."). At both Kingsbury and Kennedy Krieger, Z.B. would receive specialized instruction at all times during the school day that he is not receiving his related

14

services. As such, the number of specialized instruction hours on Z.B.'s IEP was derived by subtracting the time devoted to Z.B.'s related services from the total bell schedule of Kingsbury. AR 1101-03. The 26 hours of specialized instruction listed on Z.B.'s IEP relates more to Kingsbury's bell schedule than to Z.B.'s specific educational needs.

Moreover, the Court finds that Kennedy Krieger's shorter bell schedule is not significant enough to constitute a fundamental change to Z.B.'s education program. This is especially true when Plaintiff has presented no evidence that Kennedy Krieger's shorter schedule will deprive Z.B. of any educational benefit or will prevent him from meeting the goals set in his IEP. And, Defendant has produced evidence that, even with a shorter bell schedule, Kennedy Krieger can implement Z.B.'s IEP. AR 12 (finding that Kennedy Krieger "can provide the services listed on [Z.B.'s] IEP"), AR 16 (same), AR 901 (testimony from Kennedy Krieger official that school could implement Z.B.'s IEP). Additionally, much of specialized instruction time lost due to Kennedy Krieger's shorter bell schedule would be offset by the school's additional month of instruction. In addition to the specialized instruction provided from September through June, Kennedy Krieger provides Z.B. with an additional 22 hours of specialized instruction, minus related services, per week during July. AR 304.

Accordingly, the Court agrees with the hearing officer and concludes that Kennedy Krieger's slightly shorter bell schedule does not represent a fundamental change in Z.B.'s educational program. AR 15 (finding that the differences in the bell schedules is "a minor discrepancy in services"); *see Savoy v. D.C.*, 844 F. Supp. 2d 33, 34-35 (D.D.C. 2012) (explaining that a minimal difference in hours at one school as compared to another was not a fundamental change in the student's education program).

The Court notes that this case is easily distinguishable from a past decision of this Court cited by Plaintiff, *G.B. v. District of Columbia*, 78 F. Supp. 3d 109 (D.D.C. 2015). In *G.B.*, the student's IEP required 31 hours of specialized instruction. And, the new location of services could provide only 27.5 hours. Additionally, the new location was not a fully separate special education setting and required the student to eat lunch segregated from her peers under adult supervision. *G.B.*, 78 F. Supp. 3d at 115. The Court concluded that these changes, taken together, "represent[ed] a fundamental alteration [in] educational placement." *Id.*

Here, there is evidence in the administrative record that Z.B.'s IEP did not actually require 26 hours of specialized instruction per week. *See* AR 1102. Additionally, both Kennedy Krieger and Kingsbury are nonpublic schools that offer specialized instruction to Z.B. throughout the entire school day. As such, unlike in *G.B.*, there is no evidence that Kennedy Krieger would expose Z.B. to an educational setting that significantly differs from Kingsbury, socially or educationally. Accordingly, the Court's decision in *G.B.* is not relevant to the Court's decision in this case.

Second, the Court considers Plaintiff's argument that the referral to Kennedy Krieger was a fundamental change to Z.B.'s education program because it required Z.B. to attend school during the summer. Plaintiff is correct that Kennedy Krieger operates an 11-month schedule with 22 hours of instruction per week in July, while Kingsbury operates a 10-month schedule. However, the focus in determining whether or not the referral to Kennedy Krieger constituted a fundamental change is not differences between the school's calendars. Instead, the focus in determining whether or not a fundamental change has occurred is Kennedy Krieger's ability to implement Z.B.'s IEP as constituted. *See Gore*, 67 F. Supp. 3d at 153 (explaining that "the content of [the student's] IEP is the focal point of the inquiry into whether there has been a

fundamental change in [the student's] education program"). And, evidence in the record shows that Kennedy Krieger was able to implement Z.B.'s IEP as well as, if not better than, Kingsbury. AR 12 (finding that Kennedy Krieger "can provide the services listed on [Z.B.'s] IEP"), AR 16 (same), AR 901 (testimony from Kennedy Krieger official that school can implement Z.B.'s IEP and provide him with a BIP). Accordingly, the Court finds that the additional month of schooling is not a fundamental change in Z.B.'s education program. *See Gore v. D.C.*, 67 F. Supp. 3d 147, 153-55 (D.D.C. 2014) (concluding that there was not a fundamental change to the student's education program when he was moved from a school with an 11-month calendar to one with a 10-month calendar); *see also Ward v. D.C.*, No. 13-cv-0098, 2014 WL 272413, at * 6-7 (D.D.C. Jan. 24, 2014) (same).

Rather than explaining why Kennedy Krieger's 11-month calendar would fundamentally change or eliminate an element of Z.B.'s education program as set forth in Z.B.'s IEP, Plaintiff points to a District of Columbia Municipal Regulation. Under District of Columbia Municipal Regulations, students should not be placed in a "[n]onpublic school or program that requires all students to attend Extended School Year (ESY) programming regardless of need or as a condition of enrollment." 5 DCMR A2844.12. "Extended School Year services" are defined as "special education and related services that [] [a]re provided to a child with a disability beyond the normal LEA school year, in accordance with the IEP, at no cost to the parents of the child." 5 DCMR E3001.

Defendant argues that it has not violated District of Columbia Municipal Regulations because Kennedy Krieger does not provide Extended School Year ["ESY"] programing as prohibited by the regulations. During the administrative hearing, Maureen Wheeler, an administrator at Kennedy Krieger, testified that "students attend … for the month of July. So that

is the 11th month. So it's different from ESY because ESY is optional. This program is an 11 month program. … The hours in the month of July are different, they're not the same. So the students come from Monday through Thursday and they leave 1 hour earlier." AR 921. Ms. Wheeler further explained that the 11-month calendar is "based on the need of the students at our school" AR 922. According to this testimony, Kennedy Krieger is not a school that requires "all students to attend [ESY] programming regardless of need." 5 DCMR A2844.12. Instead, Kennedy Krieger is simply a school that has adopted an 11-month calendar rather than a 10-month calendar in order to better meet the needs of the students. Plaintiff cites no evidence in the record contradicting Ms. Wheeler's testimony that Kennedy Krieger is "different from ESY." AR 921. Additionally, Plaintiff cites no evidence otherwise establishing that Kennedy Krieger is an ESY school as prohibited by the regulation.[3] Accordingly, Plaintiff has not met her burden of establishing that Defendant violated the District of Columbia Municipal Regulations on referring students to ESY schools.

Moreover, even if Plaintiff had established that Defendant violated District of Columbia Municipal Regulations on ESY schools, such violation would not automatically entitle Plaintiff to relief. Plaintiff is not suing Defendant for violating District of Columbia Municipal Regulations. Instead, Plaintiff is suing Defendant under the IDEA for an illegal change of placement. In determining whether or not an illegal change of placement occurred, the court asks

---

[3] In her Motion, Plaintiff states that "Kennedy Krieger has two programs, a 10-month program and an 11-month program" and that Z.B. would be forced to attend the 11-month program, thus constituting a change in placement. Pl.'s Mot., ECF No. 29, 32. Plaintiff fails to cite anything in the record supporting the statement that Kennedy Krieger offers two different programs. Instead, Plaintiff cites "attachment #1." *Id.* at 32 n.13. But, attachment #1, is a psychological triennial reevaluation of Z.B. from November 2015, and contains no information about Kennedy Krieger's program. Accordingly, the Court does not credit this unsubstantiated and unsupported claim.

if there has been a "fundamental change in, or elimination of a basic element of the education program" as provided by the students IEP. *Lunceford*, 745 F.2d at 1582. The violation of a District of Columbia Municipal Regulation fails to automatically establish that Z.B.'s referral to Kennedy Krieger fundamentally changed or eliminated a component of Z.B.'s education program as outlined in his IEP. And, Plaintiff fails to otherwise explain why Kennedy Krieger's 11-month schedule would fundamentally change or eliminate a component of Z.B.'s education program as outlined in his IEP. Instead, record evidence shows that Kennedy Krieger would be able to implement Z.B.'s IEP as well as develop a BIP, something that Kingsbury either could not or would not do. AR 901 (stating that Kennedy Krieger could implement Z.B.'s IEP and provide a BIP). As such, even if Defendant had violated the District of Columbia Municipal Regulation on ESY schools, Plaintiff has failed to establish that such a violation would result in an illegal change of placement.

Third, Plaintiff argues that Z.B.'s referral to Kennedy Krieger is an illegal change of placement because the distance between Z.B.'s residence and Kennedy Krieger is more than double the distance between his residence and Kingsbury. According to Plaintiff, the commute to Kennedy Krieger is approximately 10 miles longer than the commute to Kingsbury. The Court concludes that this relatively minor change in commute distance does not constitute a fundamental change to Z.B.'s education program.

As an initial matter, Plaintiff's concerns about a minor addition to Z.B.'s commute say nothing about Kennedy Krieger's ability to fulfill Z.B.'s IEP, which is the focus of the Court's analysis. *See Gore*, 67 F. Supp. 3d at 153 (explaining that "the content of [the student's] IEP is the focal point of the inquiry into whether there has been a fundamental change in [the student's] education program"). Plaintiff fails to explain how the longer commute would fundamentally

change or eliminate a component of Z.B.'s education program. Instead, Plaintiff argues that the additional commute may affect Z.B. because he has challenges with transitions. There is some evidence in the record that Z.B. struggles to adapt to changes. AR 315-30. However, nothing in the record connects this difficulty with change to an inability to sustain an additional 10-minute commute. Moreover, Plaintiff cites nothing in the record showing that, with time and exposure, Z.B. would be unable to adapt to his slightly longer commute.

Plaintiff also argues that the longer commute would violate the IDEA which requires that a child's placement be "as close as possible to the child's home." 34 C.F.R. § 300.552(b). However, this regulation does not require that Defendant place Z.B. at the school closest to his home, regardless of whether or not that school is able to meet his educational and behavioral needs. There is evidence in the record that Z.B. was struggling behaviorally and academically at Kingsbury, the school closest to Z.B.'s home. Both Plaintiff and Mr. Branham were concerned about whether Kingsbury was the right school for Z.B. AR 1004-09. These concerns were based on Kingsbury's ability to meet Z.B.'s needs and Z.B.'s negative interactions with other students. AR 1007-08. In monitoring Z.B. during his classes, Ms. Barlow's observations confirmed these concerns. Ms. Barlow noted that Z.B was easily distracted in his classes and that Kingsbury was not meeting Z.B.'s academic and behavioral needs. AR 1066-70, 1083, 1116. Kingsbury's failure to meet Z.B.'s academic and behavioral needs led Defendant to conclude that a new location of services was necessary. AR 1083. Under these circumstances, it was reasonable and lawful for Defendant to move Z.B. from Kingsbury to Kennedy Krieger, a school slightly further from Z.B.'s home. The IDEA does not require DCPS to leave a student in a school that fails to meet his needs because an alternative location of services is slightly further away. For these reasons, the Court concludes that the additional commute to Kennedy Krieger did not constitute a

fundamental change to Z.B.'s education program. *See DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 154 (3d Cir. 1984) ("Minor changes in the daily transportation routine, however, will not generally have such an impact on the child's learning experience, even when the child is severely handicapped.").

Having addressed Plaintiff's three arguments as to why Z.B.'s referral to Kennedy Krieger constituted an illegal change in placement, the Court concludes the hearing officer did not err in determining that "the change from [Kingsbury] to [Kennedy Krieger] was a change in service locations rather than a change in placement." AR 15. Z.B. was referred from one nonpublic, standalone, special education school to another. While Kennedy Krieger had a slightly different bell schedule than Kingsbury, there is no record evidence that this change would have any effect on Z.B.'s education program. There is also no evidence that Kennedy Krieger's 11-month calendar would fundamentally change Z.B.'s education program. Finally, there is no evidence that the slightly longer commute to Kennedy Krieger would affect Z.B.'s education program. Instead, the record evidence suggests that Kennedy Krieger would implement Z.B.'s IEP better than Kingsbury, which evidence shows was failing to meet Z.B.'s academic and behavioral needs.

Accordingly, the Court concludes that Z.B.'s referral to Kennedy Krieger was not an illegal change of placement. Instead, Z.B.'s referral to Kennedy Krieger was merely a change in Z.B's location of services.

**B. Denial of FAPE based on Exclusion of Plaintiff**

Second, Plaintiff argues that Z.B. was denied a FAPE when Defendant excluded her from participating in the decision to refer Z.B. to Kennedy Krieger. A procedural violation, such as the exclusion of Plaintiff from the decision-making process, results in a denial of a FAPE only where

the procedural inadequacies "impeded the child's right to a free and appropriate public education; [] significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free and appropriate public education to the parents' child; or [] caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). The Court concludes that Z.B. was not denied a FAPE based on the exclusion of Plaintiff from participating in the decision to change Z.B.'s location of services.

First, the Court concludes that Z.B. was not denied a FAPE on this ground because the decision to refer Z.B. to Kennedy Krieger was a change in location of services not a change in educational placement, which would have necessitated parental involvement. The IDEA requires that a student's parents be part of the team that creates the student's IEP and determines the student's educational placement. *See* 20 U.S.C. § 1414(d)(1)(A)-(B). However, the IDEA does not "'explicitly require parental participation in site selection.'" *James*, 949 F. Supp. 2d at 138 (quoting *White ex rel. White v. Ascension Parish School Bd.*, 343 F.3d 373, 379 (5th Cir. 2003)). Plaintiff has failed to cite any case, from this Circuit or another, requiring parental involvement in site selection. Instead, all of the cases cited by Plaintiff in support of her argument refer to parental participation in the development of the student's IEP and educational placement. *See e.g., Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1044-45 (9th Cir. 2013) (requiring parental participation in the student's IEP development and educational placement); *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1055 (9th Cir. 2012) (same); *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 857-59 (6th Cir. 2004) (explaining that a predetermination of services can violate the parents' right to participate in the IEP process).

The Court has already determined that the referral to Kennedy Krieger was a change in location of services, not a change in educational placement. *See Supra* Sec. III.A; *see also* AR 15

(hearing officer's finding that the change was a "change in service locations rather than a change in placement"). Accordingly, Defendant was not required to include Plaintiff in the decision to change the location of Z.B.'s services to Kennedy Krieger. And, Plaintiff presents no argument that she was otherwise excluded from participating in the development of Z.B.'s IEP or educational placement. *See* AR 502 (Plaintiff indicating that she participated in and agreed with Z.B.'s IEP). Accordingly, Plaintiff has failed to establish a procedural violation which would result in a denial of a FAPE to Z.B.

Even if Defendant had been required to include Plaintiff in changing Z.B.'s location of services, Plaintiff has failed to establish that Defendant "significantly impeded [her] opportunity to participate in the decisionmaking process." 20 U.S.C. § 1415(f)(3)(E)(ii). In reviewing this claim, the hearing officer explained that "[t]he instant situation is not one in which DCPS avoided [Plaintiff] entirely or consistently in favor of [Mr. Branham]. Rather, under the particular facts of this case, [Plaintiff] does not meet the burden of proving that DCPS denied [Z.B.] a FAPE by changing [Z.B.'s] school from [Kingsbury] to [Kennedy Krieger], or in working with [Mr. Branham] rather than both parents, when after repeated attempts to engage both parents, [Plaintiff] declined in several key regards to participate in selecting a different service location for [Z.B.]" AR 15. Plaintiff has failed to introduce evidence sufficient to rebut the hearing officer's conclusion.

Defendant regularly communicated with Plaintiff and Mr. Branham regarding concerns about Kingsbury's inability to meet Z.B.'s educational and behavioral needs, as well as a potential change in location of services. Plaintiff understood that Defendant had concluded that Kingsbury was an inappropriate location for Z.B. AR 556-57, 562-64. Despite this knowledge, Plaintiff did not fully engage in the process of finding Z.B. a new location of services.

For example, Plaintiff refused to visit multiple proposed schools, resulting in the rejection of Z.B.'s applications from those schools. AR 234 (letter noting Plaintiff's refusal to allow Z.B. to visit other schools), 1097 (noting that referrals to other schools were cancelled because Plaintiff would not participate). Additionally, prior to the end of the school year, Defendant attempted to conduct a meeting with Plaintiff and Mr. Branham to discuss Z.B.'s location of services. Plaintiff indicated to Kingsbury that she could meet only in the afternoons after 1:30 p.m. Additionally, Plaintiff required that members of Z.B.'s Kingsbury education team be at the meeting. AR 1086-87. Z.B.'s Kingsbury education team provided only one day on which they were available at 1:30 p.m. Unfortunately, Defendant had another meeting regarding a different student that day at 2:00 p.m. at Kingsbury and, as such, could not meet regarding Z.B. at 1:30 p.m. Due to these restrictions, Defendant was unable to arrange a meeting with Plaintiff to discuss a change in Z.B.'s location of services prior to the end of the school year. AR 1087-90, 1095-96.

Plaintiff contends that Defendant's failure to meet on the only day which both Plaintiff and the Kingsbury team were available is evidence of Defendant's intent to exclude her from the site selection process. The Court disagrees. Defendant had a previously-scheduled meeting at 2:00 p.m. on the only day suggested by Kingsbury. As such, it is reasonable that Defendant would not be able to conduct Z.B.'s meeting, which would begin just thirty minutes prior to the already-scheduled meeting, even if the two meetings were to be held at the same location. Defendant could have reasonably concluded that thirty minutes would be an insufficient duration of time to conduct a meeting regarding a child's contested location of services with multiple stakeholders holding differing points of view. The Court does not find Defendant's scheduling conflict to be evidence of a predetermined decision to exclude Plaintiff, especially given

Defendant's multiple other attempts to include Plaintiff in the location of services determination. *See* AR 16 (hearing officer's finding that Defendant's inability to conduct a meeting on the date suggested by Kingsbury was "due to other meetings … already scheduled at [Kingsbury] regarding other students").

Having failed to obtain Plaintiff's assistance in finding a new location for Z.B., and believing that Kingsbury was an inappropriate location for Z.B., Defendant worked exclusively with Mr. Branham in pursuing a referral to Kennedy Krieger. AR 1099. In concluding that Kennedy Krieger was an appropriate placement for Z.B., Defendant visited the classes that Z.B. would attend, spoke with Z.B.'s potential teacher, and observed the individualized supports in place. AR 1103-04. Additionally, Mr. Branham visited the school and was "really impressed." AR 1010-11.

Based on the facts as explained above, the Court concludes that Plaintiff was not wrongfully excluded from the location of services decision. Defendant repeatedly attempted to engage Plaintiff in selecting a new school, which would more appropriately implement Z.B.'s IEP. But, Plaintiff refused to participate in the process, resulting in rejections from multiple schools. Accordingly, the Court finds that Defendant did not commit a procedural violation, resulting in a denial of a FAPE to Z.B., when Defendant chose to work with Mr. Branham in obtaining a referral to Kennedy Krieger.

Plaintiff has two arguments as to why her exclusion from the decision to refer Z.B. to Kennedy Krieger resulted in the denial of a FAPE to Z.B. First, Plaintiff argues that Defendant had "predetermined" Z.B.'s educational placement and failed to consider her arguments for a less restrictive setting or a new disability diagnosis. Second, Plaintiff contends that Defendant's

decision to work exclusively with Mr. Branham violated a custody order which granted Plaintiff "tie-breaking" authority. The Court is persuaded by neither argument.

First, Plaintiff claims that Defendant "predetermined" Z.B.'s educational placement, thus wrongfully excluding her from participating in the decision-making process. Specifically, Plaintiff faults Defendant for not considering her requests for a less restrictive setting and for a change in Z.B.'s disability classification. Specifically, Plaintiff contends that Z.B.'s IEP should have reflected a "specific learning disability" in math rather than only autism.[4] Plaintiff's concerns regarding Z.B.'s least restrictive setting and disability classification pertain to his IEP, not to his referral to Kennedy Krieger. But, Plaintiff did not challenge Z.B.'s IEP during the administrative hearing. Instead, Plaintiff's challenges were limited to Z.B.'s change in location of services to Kennedy Krieger. "[A]n allegation not presented to the independent hearing officer at a due process hearing may not be raised for the first time in this Court." *Holdzclaw v. District of Columbia*, 524 F. Supp. 2d 43, 47 (D.D.C. 2007); *see also Cox v. Jenkins*, 878 F.2d 414, 419-20 (D.C. Cir. 1989).

If Plaintiff was concerned that Z.B.'s IEP did not accurately reflect his least restrictive setting or his true disability classification, she could have challenged his IEP. But, there is no evidence that Plaintiff indicated disagreement with Z.B.'s IEP before now. During the administrative hearing, Plaintiff stated that she had participated in the development of Z.B.'s IEP. AR 502. Plaintiff further indicated that she agreed with the substance of Z.B.'s IEP. AR 503

---

[4] In her Motion, Plaintiff argues that Z.B.'s IEP was inappropriate because his most recent evaluation indicates that he has a specific learning disability. Exhibit 3, ECF No. 29-3. But, this evaluation was conducted after Plaintiff filed her lawsuit and was not before the hearing officer. Moreover, as this evaluation post-dates Defendant's decision to refer Z.B. to Kennedy Krieger, the evaluation cannot be used as evidence that the referral to Kennedy Krieger was inappropriate given the information available to Defendant at the time.

("I agreed on what they were saying that's what he needed."). Plaintiff cannot indicate agreement with Z.B.'s IEP during the administrative hearing, then, before this Court, use alleged errors in the IEP's least restrictive setting and disability classification to argue that she was wrongfully excluded from deciding Z.B.'s location of services. *See Schoenbach v. D.C.*, 309 F. Supp. 2d 71, 87 (D.D.C. 2004) (noting that parents contributed to the student's inappropriate IEP when they did not contest the IEP during its development).

Before the hearing officer and in her Second Amended Complaint, Plaintiff challenged only issues concerning Z.B.'s referral from Kingsbury to Kennedy Krieger. Plaintiff's present argument pertaining to the appropriateness of Z.B.'s IEP is a red herring. Evaluating the appropriateness of Z.B.'s IEP does not assist the Court in determining whether or not Plaintiff was wrongly excluded from participating in the decision to send Z.B. to Kennedy Krieger. Kennedy Krieger was selected as a location that could implement Z.B.'s IEP as it was written at the time, not as Plaintiff now argues it should have been written. After indicating agreement with Z.B.'s IEP, Plaintiff cannot now, for the first time in this lawsuit, argue that Z.B.'s IEP was inappropriate thus leading to an inappropriate placement.

Second, Plaintiff argues that Defendant violated the custody order between herself and Mr. Branham by excluding her from the decision to refer Z.B. to Kennedy Krieger. Under Mr. Branham and Plaintiff's "Final Divorce and Custody Order," "[i]n the event that the parties cannot reach a shared decision regarding their children after a good-faith effort to do so, [Plaintiff] shall have tie-breaking authority." AR 408. Plaintiff contends that Defendant violated the custody order by not grating her "tie-breaking authority" over the decision of Z.B.'s location of services.

But, Plaintiff fails to acknowledge that this custody order is between herself and Mr. Branham, not between herself and Defendant. The obligations in the custody order go to the parents, not to Defendant. Accordingly, Defendant is not bound by the dictates of the custody order.

Even if Defendant were bound by the custody order, the order grants Plaintiff tie-breaking authority only following a "good-faith effort" to reach a shared decision. Based on the record evidence, it is far from evident that Plaintiff engaged in a good-faith effort to reach an agreement on Z.B.'s location of services. Plaintiff refused to even visit many of the schools recommended by Defendant. AR 958-59 (discussing Plaintiff's refusal to visit two schools), 1097. Additionally, Plaintiff's scheduling demands, as well as her requirement that Z.B.'s Kingsbury education team be in attendance, made it impossible for Defendant to schedule a meeting to discuss Z.B.'s location of services prior to the end of the school year. Accordingly, even under the terms of the custody order, it is not clear that Plaintiff was entitled to exercise tie-breaking authority and prevent Defendant from referring Z.B. to a school which would provide him with a FAPE. The Court finds that the custody order did not require Defendant to continue sending Z.B. to a school which Defendant determined could not meet Z.B.'s educational and behavioral needs because Plaintiff would not engage in the process of selecting a new location of services which would implement Z.B.'s IEP.

Considering Plaintiff's arguments as well as the record evidence, the Court finds support for the hearing officer's conclusion that Plaintiff "does not meet the burden of proof on this issue." AR 15. Defendant was not required to include Plaintiff in the decision to refer Z.B. to Kennedy Krieger as the referral was a change in the location of services rather than a change in educational placement. Even if Defendant were required to seek parental involvement,

Defendant made multiple attempts to engage Plaintiff in the process of selecting a new location of services for Z.B. Ultimately, Defendant was forced to choose between continuing to send Z.B. to a school which was not meeting his educational and behavioral needs or working with Mr. Branham, who maintains shared legal and physical custody over Z.B., to find a new location of services. Defendant reasonably chose to work with Mr. Branham to select a location of services which would implement Z.B.'s IEP. Accordingly, the Court finds that Z.B. was not denied a FAPE based on Plaintiff's exclusion from the decision to refer Z.B. to Kennedy Krieger.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment. The Court concludes that Z.B.'s referral to Kennedy Krieger was not an illegal change in placement because the referral was a change in location of services which did not fundamentally change or eliminate any component of Z.B.'s education program. The Court further concludes that Z.B. was not denied a FAPE when Plaintiff was excluded from the decision to refer Z.B. to Kennedy Krieger because Defendant was not required to involve Plaintiff in the change of location of services but still made multiple, reasonable attempts to involve Plaintiff. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
